Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA T. MOXEY,<br><br>Plaintiff,<br><br>v.<br><br>JIMMY AUTO SALE LLC and JAMIL BASUF,<br><br>Defendants. | Civil Action No. 17-4731 (ES) (JAD)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Joshua T. Moxey's ("Plaintiff's") motion for default judgment against Defendants Jimmy Auto Sale LLC ("Jimmy Auto") and Jamil "Jimmy" Basuf ("Basuf") (together, "Defendants"). (D.E. No. 17). The Court has considered Plaintiff's submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons the Court GRANTS the motion.

**I.      Background**

This action arises under the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701, *et seq.* (the "Odometer Act"). (*See* D.E. No. 11 ("Am. Compl.")). Plaintiff, a Maryland resident, asserts that Defendants tampered with the odometer of a 2002 Subaru WRX with Vehicle Identification Number JF1GD29642G512527 (the "Subaru"), and then provided false statements regarding the mileage reading on the Subaru's odometer. (*See id.* ¶¶ 5, 8, 27 & 32).

Jimmy Auto is a limited liability company organized under the laws of New Jersey and regularly does business in New Jersey. (*Id.* ¶ 6). Basuf is one of the owners and the registered

agent of Jimmy Auto, and he resides in New Jersey. (*See id.* ¶¶ 7 & 18; D.E. No. 11-3).

On September 7, 2001, Martha J. Goodwin purchased the Subaru with 15 miles on its odometer from a Ramsey, New Jersey, car dealer. (Am. Compl. ¶ 9). Over the next few years the Subaru's odometer showed an increasing mileage reading each time Ms. Goodwin conducted safety and emissions inspections and presented the Subaru to auto service shops. (*See id.* ¶¶ 10–13). On or about December 17, 2011, Ms. Goodwin presented the Subaru for service to Mahwah Bergen Tire Service Center with 219,177 miles on its odometer. (*Id.* ¶ 13; D.E. No. 11-1 ("Ex. A") at 1).[1]

On November 15, 2016, Ms. Goodwin sold the Subaru to a person named "Jimmy" for $800. (Am. Compl. ¶ 14). Jimmy represented that he was going to fix the Subaru and race it, and Ms. Goodwin was unaware that "Jimmy" (whose real name is Jamil Basuf, i.e., Defendant Basuf) was in fact a car dealer buying the Subaru on behalf of his company, Jimmy Auto. (*See id.* ¶¶ 14 & 18; Ex. A at 2).

Plaintiff alleges that Ms. Goodwin completed the Title form and provided the correct mileage reading, which at the time "was greater than 260,000.00 miles." (Am. Compl. ¶ 15; Ex. A at 2). However, the Odometer Disclosure Statement and Statement of Seller, which was signed by Defendants and apparently by someone claiming to be Ms. Goodwin, "intentionally certified that the odometer reading was 98,231 miles," that "this odometer reading . . . reflected the actual mileage of the [Subaru,]" and that "the odometer was not altered, set back or disconnected" while in Ms. Goodwin's possession. (*See* Am. Compl. ¶¶ 16–18; Ex. A at 2; D.E. No. 11-2 ("Ex. B") at 5). Plaintiff alleges that "[u]pon information and belief, Mr. Basuf was the signatory of the

---

[1]    All references to page numbers of filings refer to the automatically generated CM/ECF pagination in the upper-righthand corner.

Odometer Disclosure Statement and Statement which falsely stated an incorrect reading." (Am. Compl. ¶ 18; D.E. No. 11-3 at 2).

On or about November 15, 2016, Defendant Jimmy Auto sold the Subaru to MSC Expeditions, Inc. ("MSC"). (Am. Compl. ¶ 19). Jimmy Auto issued a disclosure stating that the Subaru's odometer reading was 98,231 miles. (*Id.* ¶ 20; Ex. B at 6). Jimmy Auto certified that to the best of its knowledge, this reading was the actual mileage and that the odometer had not been altered. (Am. Compl. ¶ 20). MSC then sold the Subaru to Bridge Dealers Services, Inc., issuing an odometer disclosure certifying that the odometer reading was 98,240 miles. (*See id.* ¶ 19; Ex. B. at 7). Bridge Dealer Services, Inc. subsequently sold the Subaru to Richard Turkin II for $5,500, issuing an odometer disclosure certifying that the odometer reading was 98,266 miles. (*See* Am. Compl. ¶ 19; Ex. B at 8 & 13).

On or about January 13, 2017, Plaintiff purchased the Subaru from Mr. Turkin II for $2,000.00[2] with 99,801 miles on its odometer. (*See* Am. Compl. ¶ 21; Ex. B. at 12 & 14). On or about February 24, 2017, Plaintiff presented the Subaru for service to RK Subaru in Virginia Beach, Virginia, with 102,004 miles on its odometer. (Am. Compl. ¶ 22). The service technician then showed Plaintiff records from other dealers that stated that the Subaru "had previously been serviced on or about July 14, 2010, with 194,974 miles on its odometer." (*Id.*). Plaintiff, thus, became aware for the first time that the odometer of the Subaru "had been tampered with and that the mileage had been rolled back." (*Id.*).

On June 27, 2017, Plaintiff initiated this action naming Ms. Goodwin and Jimmy Auto as

---

[2] The Amended Complaint alleges that Plaintiff bought the Subaru from Mr. Turkin II for $5,500. (Am. Compl. ¶ 21). This appears to be a mistake. The provided Reassignment of Certificate of Ownership documents indicate that Mr. Turkin II bought the Subaru from Bridge Dealers Services for $5,500 (*see* Ex. B. at 8), and later sold it to Plaintiff for $2,000 (*id.* at 14).

-3-

defendants. (D.E. No. 1). On February 14, 2018, Plaintiff voluntarily dismissed the complaint against Ms. Goodwin. (D.E. No. 10). Plaintiff then amended his complaint, adding Basuf as a Defendant. (*See* Am. Compl.). Both Jimmy Auto and Basuf defaulted. (*See* D.E. Nos. 13 & 14; D.E. Dated 05/09/2018; *see also* D.E. No. 7; D.E. Dated 01/29/2018).

The Amended Complaint raises four claims: Count I – violation of the Odometer Act by Basuf; Count II – violation of the Odometer Act by Jimmy Auto; Count III – violation of the New Jersey Consumer Fraud Act by Basuf; and Count IV – violation of the New Jersey Consumer Fraud Act by Jimmy Auto. (Am. Compl. ¶¶ 25–56). In the instant motion, Plaintiff asserts liability only as to Counts I and II, and does not seek judgment against Defendants with respect to Counts III and IV. (D.E. No. 17 at 4).

## II. Legal Standard

Under Federal Rule of Civil Procedure 55, a district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting the relief. *Id.*

A plaintiff, however, is not entitled to entry of default judgment as of right. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct.

30, 2015). Additionally, the Court must determine whether default judgment is proper by making "explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

In making these determinations "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

### III. Discussion

#### A. Jurisdiction and Service

"In order to impose personal liability upon a defendant or obligate him or her in favor of a plaintiff, a court must be vested with jurisdiction over the parties as well as subject matter jurisdiction." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir.1996).

Plaintiff brings this action under the Odometer Act. (*See* Am. Compl. ¶¶ 2 & 3). Consequently, the Court has federal question subject matter jurisdiction because the cause of action arises under the laws of the United States. *See* 28 U.S.C. § 1331.

Moreover, the Court may exercise personal jurisdiction over Defendants. Plaintiff alleges that Jimmy Auto is a New Jersey limited liability company operating out of Paterson, New Jersey. (Am. Compl.¶ 6). Plaintiff also alleges that Basuf is an individual who resides in New Jersey. (*Id.* ¶ 7). Because New Jersey is both Defendants' home, the Court may exercise general personal jurisdiction over them. *See, e.g.*, *United States v. Burgess*, No. 18-1571, 2018 WL 6040268, at *2 (D.N.J. Nov. 19, 2018); *Graves v. Vasquez-Pillacela*, No. 17-4114, 2018 WL 3601231, at *2 (D.N.J. July 27, 2018).

Finally, Plaintiff also provided the Court with sufficient proof of service. Plaintiff certified that Jimmy Auto was served with the original complaint on July 26, 2017, and with the Amended Complaint on March 22, 2018, by service of process on Defendant Basuf, who is Jimmy Auto's office manager and registered agent. (*See* D.E. Nos. 5, 11-3 & 13-1); Fed. R. Civ. P. 4(h) (permitting service of an unincorporated association by "delivering a copy of the summons and complaint to . . . any other agent authorized by appointment or by law to receive service of process. . . ."). And Plaintiff also certified that Basuf was personally served on March 22, 2018. (*See* D.E. Nos. 12 & 14-1). Therefore, the Court is satisfied that it has jurisdiction to enter default judgment.

### B. Sufficiently Pleaded Cause of Action

"A consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne*, 908 F.2d at 1149 (internal quotation marks omitted).

The Odometer Act permits private persons to assert a civil action for any violation of the Act's provisions and regulations made "with intent to defraud." 49 U.S.C. § 32710(a). That is, in order to plea an Odometer Act claim a plaintiff must allege i) a violation of the Act or its regulations that is ii) made with the "intent to defraud." *See id.*; *Owens v. Samkle Auto. Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005). Here, Plaintiff alleges that Defendants violated Sections 32703(2) and 32705(a). (Am. Compl. ¶¶ 27 & 32).

***Section 32703(2) Liability.*** In relevant part, Section 32703 states that "[a] person may not . . . disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2); *see also Vasilas v. Subaru of Am., Inc.*, No. 07-2374, 2009 WL 8447590, at *5 (S.D.N.Y. Aug. 5, 2009) ("An odometer has been prohibitively altered where it would have been capable, subject only to

normal fluctuations, to accurately register mileage had it not been intentionally changed to make the instrument register mileage differently."). Thus, to state a Section 32703(2) civil claim the plaintiff must allege that the defendant i) altered the odometer of a motor vehicle intending to change the mileage registered by the odometer ii) with the intent to defraud.

Plaintiff alleges that after purchasing the Subaru from Ms. Goodwin, Defendants altered or caused to be altered the odometer of the Subaru intending to decrease the mileage registered by the odometer from 260,000 miles to 98,231 miles, and they did this with the intent to defraud the subsequent buyers of the Subaru. (*See* Am. Comp. ¶¶ 15–18, 20, 28 & 33). These allegations are supported by the certificate of title history of the Subaru and other exhibits attached to the Amended Complaint. (*See* Exs. A & B). The Court finds that these allegations meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and sufficiently state a Section 32703(2) claim. *See, e.g.*, *King v. Union Leasing Inc.*, No. 17-03281, 2018 WL 5044660, at *2 (D. Ariz. Oct. 17, 2018); *Klein v. Pincus*, 397 F. Supp. 847, 851 (E.D.N.Y. 1975) (noting that in the absence of an explanation, proof of a change in the odometer's reading supports conclusion of intent to defraud).

***Section 32705(a) Liability.*** The Odometer Act also requires that a person transferring ownership of a motor vehicle give the transferee a written disclosure stating the cumulative mileage registered on the odometer. 49 U.S.C. § 32705(a)(1)(A). Relevant here, "[a] person transferring ownership of a motor vehicle may not . . . give a false statement to the transferee in making the disclosure required by such a regulation." 49 U.S.C. § 32705(a)(2). Disclosure of a vehicle's cumulative mileage must be made "to the transferee in writing on the title. . . ." 49 C.F.R. § 580.5(c). A "title" is "the certificate of title or other document issued by the State indicating ownership." 49 U.S.C. § 32702(7). Moreover, liability for violation of the disclosure requirement

provisions only exists against a vehicle's transferor. *See Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 709 (7th Cir. 2005) ("[A]n Odometer Act claim that is brought by a private party and is based on a violation of [the implementing regulations] requires proof *that the vehicle's transferor intended to defraud a transferee with respect to mileage.*" (emphasis added)); *Irby–Greene v. M.O.R., Inc.*, 79 F. Supp.2d 630, 634 (E.D. Va. 2000) ("[I]t is well-established that the cause of action created by the Odometer Act exists only against a transferor."). A "transferor" is defined as "any person who transfers his ownership in a motor vehicle . . . ." 49 C.F.R. § 580.3.

At the same time, however, the Odometer Act permits the Secretary of Transportation to exempt certain classes of vehicles from the disclosure requirements. *See* 49 U.S.C. § 32705(a)(5). For instance, a transferor of a "vehicle that was manufactured in a model year beginning at least ten years before January 1 of the calendar year in which the transfer occurs" need not disclose the vehicle's odometer mileage. 49 C.F.R. § 580.17(a)(3).

The net effect of these provisions and regulations is that a person or entity transferring ownership of a motor vehicle must disclose the odometer mileage in writing on the title, but "need not" make such a disclosure if the vehicle was manufactured at least ten years before the calendar year of the transfer. *See* 49 U.S.C. § 32705(a)(2) & (5); 49 C.F.R. § 580.17(a)(3). Here, Plaintiff alleges that when Jimmy Auto sold the Subaru to MSC, Jimmy Auto gave false statements in the title disclosure that the odometer reading was 98,231 miles and that this reading reflected the actual mileage of the Subaru, when in fact, the correct mileage was at least 260,000 miles. (*See* Am. Compl. ¶¶ 15 & 20). Plaintiff alleges that Jimmy Auto took these actions with the intent to defraud. (*Id.* ¶¶ 28 & 33). Thus, Plaintiff has sufficiently stated a Section 32705(a) claim. *See, e.g.*, *King*, 2018 WL 5044660, at *2; *Coleman v. Lazy Days RV Ctr., Inc.*, No. 05-0930, 2006 WL

889736, at *4 (M.D. Fla. Mar. 31, 2006).[3]

Furthermore, although the Amended Complaint makes clear that the Subaru falls within the ten-year exemption to the disclosure requirement, Jimmy Auto waived the disclosure exemption. Particularly, the Subaru was manufactured in 2002 (Am. Compl. ¶ 8; Ex. B at 4), making it exempt from odometer disclosure requirements starting January 2012. *See* 49 C.F.R. § 580.17(a)(3). The relevant transfer occurred in November 2016 when Jimmy Auto sold the Subaru to MSC (Am. Comp. ¶ 19), and thus, Jimmy Auto "need not" have disclosed the odometer mileage 49 C.F.R. § 580.17(a). But the Amended Complaint alleges that Jimmy Auto *did* make disclosures to MSC, and that these disclosures falsely represented the Subaru's mileage. (*See* Am. Compl. ¶¶ 15 & 20). And the exhibits attached to the Amended Complaint indicate that subsequent owners relied on Jimmy Auto's false disclosure to make their own disclosures down the line of ownership, including when Plaintiff bought the Subaru from Mr. Turkin II. (*See generally* Ex. B). As a result, Jimmy Auto waived the disclosure exemption. *See, e.g.*, *Tirtel v. Sunset Auto & Truck, LLC*, No. 18-0481, 2019 WL 186650, at *3 (M.D. Fla. Jan. 14, 2019) ("Given one of the purposes of the Act is to protect purchasers from fraud, and the Act must be broadly construed to effectuate this purpose, § 32705(a)(2) must be interpreted to preclude false statements made during the sales transaction even if not written on the title."); *accord Coleman*, 2006 WL 889736, at *4; *Extra Mile, LLC v. Don Baskin Truck Sales, LLC*, No. 06-2589, 2007 WL 9706253, at *4 (W.D. Tenn. Nov. 6, 2007).[4]

---

[3] Plaintiff also asserts that Basuf violated Section 32705(a). (Am. Comp. ¶ 27(c)). However, the Amended Complaint provides no factual allegations that Basuf himself ever made any odometer disclosures to a transferee. (*See generally* Am. Comp.). And while the Amended Complaint infers that Basuf falsified Ms. Goodwin's Odometer Disclosure Statement and Statement of Seller (*see id.* ¶ 16 & 18), Basuf never had ownership of the Subaru (*see* Ex. B at 5 (indicating that Jimmy Auto, not Basuf individually, bought the Subaru from Ms. Goodwin). Therefore, Basuf cannot be a "transferor" within the meaning of the statute. *See* 49 C.F.R. § 580.3.

[4] The Court is aware that some courts have found that when a disclosure exemption applies, no liability arises

Therefore, the Court is satisfied that Plaintiff has sufficiently alleged a cause of action against both Defendants under sections 32703(2), and Plaintiff has also sufficiently alleged that Jimmy Auto violated Section 32705(a)(5).

**C.     Appropriateness of Default Judgement**

Next, the Court must determine whether default judgment is proper. *See Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012). To do so, the Court "must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177.

First, the Court finds that based upon the present record and the facts alleged in the Amended Complaint, as well as the absence of any responsive pleading, Defendants do not have a meritorious defense. *See, e.g., Dubin Paper Co.*, 2012 WL 3018062, at *4. Second, Plaintiff will suffer prejudice absent entry of the requested relief, as Plaintiff does not have any other means of obtaining relief. *See id.* (finding that the plaintiffs would be prejudiced because the defendant's failure to answer prevented the plaintiffs from "prosecuting their case, engaging in discovery, and obtaining a final outcome—good or bad—on their claims"). Finally, the Court finds that Defendants are culpable because they have failed to respond or otherwise appear before the Court

---

under Section 32705(a)(5) for a false disclosure. *See, e.g.*, *Midwestern Motor Coach Co. v. Gen. Elec. Co.*, 289 F. App'x 958, 959 (8th Cir. 2008) (finding that defendant was not liable despite allegedly providing false odometer statement when the vehicle at issue was exempt from the mileage reporting requirement). *Midwestern Motor Coach* and similar cases ignore, however, that the Odometer Act is a remedial statute aimed at preventing odometer tampering and fraud. *See* 49 C.F.R. § 580.2 ("The purpose of this part is to provide purchasers of motor vehicles with odometer information to assist them in determining a vehicle's condition and value. . . ."). As a remedial statute, the Odometer Act's provisions "should be broadly construed to effectuate its purpose." *Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318, 1322 (11th Cir. 2005). The Court, thus, finds cases like *Midwestern Motor Coach* unpersuasive. *See Tirtel*, 2019 WL 186650, at *3.

despite being served with the Summons and Complaint. (*See* D.E. Nos. 5 & 12); *see, e.g.*, *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability). Therefore, default judgment is proper.

**D.     Monetary Damages, Attorneys' Fees, and Costs**

Although the facts pleaded in the Amended Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. *See Comdyne*, 908 F.2d at 1149.

Under the Odometer Act a person who violates the Act's provisions or its regulations is subject to statutory civil damages in the amount of "3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a). Plaintiff does not seek actual damages and requests the statutory minimum of $10,000 against each defendant. (*See* D.E. No. 17 at 4). Thus, the Court will enter default judgment against Jimmy Auto and Basuf in the amount of $10,000.00 each.

Plaintiff is also entitled to recover reasonable attorneys' fees and costs. *See* 49 U.S.C. § 32710(b). The "starting point for determining the amount of a reasonable fee is the lodestar calculation," which is "the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007) (internal quotation marks omitted). A request for fees must be accompanied by "fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Id.* at 291 (quoting *Evans v. Port Auth.*, 273 F.3d 346, 361 (3d Cir. 2001)). Moreover, "where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Here, Plaintiff's counsel submitted affidavits and invoices supporting the application for

-11-

reasonable attorneys' fees. (D.E. Nos. 17-1, 17-2, 17-5 & 17-6). The Court has reviewed the two billing records provided by Plaintiff: one for Plaintiff's Maryland attorney and one for Plaintiff's local counsel. (D.E. Nos. 17-2 & 17-6). These records comply with Local Civil Rules 54.1 and 54.2, and contain individual entries memorializing the work spent on this case, along with notes explaining the type of work done. (*See id.*). The entries contain sufficient detail to determine whether the fees and costs are reasonable. (*See id.*); *Dubin Paper Co.*, 2012 WL 3018062, at *5.

The record reflects that Plaintiff's Maryland attorneys spent a total of 32.30 hours on research, investigating this matter, reviewing relevant files, client contact, arranging to obtain and coordinating efforts with local counsel, and drafting pleadings and the instant motion. (D.E. No. 17-2). Counsel charged reasonable hourly rates between $210 and $475, totaling $11,878.50. (*Id.*). Similarly, Plaintiff's local counsel spent 9.2 hours on research, reviewing relevant files, client contact, and working with Maryland counsel to draft and file the pleadings. (D.E. No. 17-6). Plaintiff charged an hourly rate of $450, for a total of $4,140.00. (*Id.*). Local counsel also incurred $449.00 in costs from the Complaint filing fee and service of process on Defendants. (*Id.*). In light of counsels' experience and skill, the nature of the case, and the services rendered, the Court finds the requested attorneys' fees to be reasonable. *See, e.g.*, *King*, 2018 WL 5044660, at *3; *Alexander v. Se. Wholesale Corp.*, No. 13-0213, 2014 WL 1165844, at *11 (E.D. Va. Mar. 21, 2014). The Court will award the requested $16,018.50 in fees, plus costs of $449.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's motion and will enter default judgment against Defendants. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**